[Cite as *In re Z.F.*, 2024-Ohio-3020.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE  Z.F., ET AL.                    :

Minor Children                         :

                                                  Nos. 113628 and 113629

[Appeal by Mother, T.F.]                :

                                       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  August 8, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-21907517 and AD-22906616

---

***Appearances:***

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

ANITA LASTER MAYS, J.:

{¶1} In this consolidated appeal, defendant-appellant T.F. ("Mother") of E.F.

and Z.F. ("the children") appeals the trial court's decision granting permanent

custody of the children to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "Agency"). We affirm the trial court's decision.

## I.    Procedural History

{¶2} On August 30, 2021, CCDCFS filed a complaint alleging that E.F. was dependent and requested a disposition of temporary custody to CCDCFS. The trial court granted the request and placed E.F. in the predispositional temporary custody of CCDCFS. On July 5, 2022, after the birth of Z.F., CCDCFS filed another complaint, alleging Z.F. was dependent and requested a disposition of temporary custody to CCDCFS. The trial court granted CCDCFS's request.

{¶3} On July 29, 2022, CCDCFS filed a motion to modify temporary custody to permanent custody for E.F., and on January 9, 2023, for Z.F. On January 12, 2024, a trial was held on CCDCFS's motions, and the court terminated Mother's parental rights, ordering the children placed in the permanent custody of CCDCFS.

## II.    Facts

### A.    Testimony of Ebony Wright, Former Case Worker

{¶4} At trial, Ebony Wright ("Wright"), an extended-services supervisor with CCDCFS, testified that she was assigned the children's case and the permanency plan for the children was reunification. Tr. 14. Wright also testified that, regarding E.F., the father was placed on a case plan. E.F.'s father was required to go to parenting classes, complete a domestic-violence course, secure housing, and maintain his basic needs. E.F.'s father only completed a domestic

violence course but failed to meet the other requirements. Additionally, he has not communicated with the agency or visited E.F. The last communication with the agency was March or April 2023. Tr. 14-16.

{¶5} Wright further testified that Mother was placed on a case plan as well. Mother was required to get help for mental health and substance abuse, attend parenting and anger-management class, and provide for the basic needs of herself and the children. Tr. 16. Mother was referred to several mental health and substance-abuse organizations, including May Dugan, Signature Health, and Guidestone. *Id.* According to Wright, Mother was previously diagnosed with PTSD, depression, and anxiety. However, Mother consistently failed to engage in those services and was unsuccessfully discharged from May Dugan. Mother completed one session of women's group therapy and one session for case management, including the parenting class. Tr. 17-18. She failed to complete the dual assessment and recommended drug screen that Signature Health advised. Mother was also unsuccessfully discharged from Guidestone. Tr. 18

{¶6} Mother has three older daughters who were placed in the permanent custody of CCDCFS and then adopted. Tr. 19. The three older daughters were permanently removed from Mother for the same reasons E.F. and Z.F. were removed. Tr. 20. Wright testified that Mother's lack of engagement does not demonstrate that her mental health is stable. Wright stated that Mother has nervous energy and is combative, anxious, and paranoid. Tr. 21. Mother's

marijuana use was also a concern to the agency even though she has a medical marijuana card to treat her anxiety. Before obtaining the card, Mother failed to submit to regular urine screens, and when she did, they were positive for marijuana.

{¶7} Wright testified that at one of the visits with the children, Mother became very aggressive, tried to attack one of the support drivers and made threats towards Wright and the driver. Wright stated that Mother threatened to "kick my a**." Tr. 25. Mother also called the support driver a "b**ch." Tr. 26. Mother leaped over Wright and another worker to attack the driver because Z.F. had on summer clothes and the driver had on a sweatshirt. *Id.* After the altercation, CCDCFS filed a report with their internal sheriff's department, contacted the guardian ad litem ("GAL") and legal team, and filed an amended case plan with the trial court to suspend Mother's visits. Tr. 27. Since May 2023, Mother has not engaged with any services listed on the case plan.

{¶8} Wright also testified that the agency attempted to place the children with family members but could not locate any. Mother offered Father of E.Z. as a placement, but he failed to complete his case plan and has not been in contact with the children or the agency. Z.F.'s father is unknown. Wright stated that E.Z.'s foster home and family are meeting E.Z.'s needs and is a foster-to-adopt home. Z.F.'s foster home and family are also meeting her needs, and there are not any

safety concerns. The children have bonded with their foster family and are receiving support services.

{¶9} Next, Wright testified that Mother is on probation for felony child endangering regarding one of her children. Wright stated that it is in the best interest of children to be placed in the permanent custody of CCDCFS because of mother's history, lack of engagement with services, failure to show progress and change, and failure to complete services.

{¶10} On cross-examination, Wright testified that Mother was upset with the driver because she felt Z.F. was inappropriately dressed. Wright explained to the court that it was July, so Z.F. was dressed appropriately for the weather. Wright also testified that the children had a bond with Mother. Wright also stated that Mother never tested for any substances other than marijuana. Wright testified that she was taken off the case in November 2023, so she did not have any information about Mother's progress beyond that date.

### B.    Testimony of Marsherie Dandridge, current case worker

{¶11} After Wright's testimony, Marsherie Dandridge ("Dandridge") testified that she is an extended worker with CCDCFS assigned to the children's case. Dandridge stated that she asked Mother about progress on her case plan, and Mother stated that she was completing a parenting class through an online course. Dandridge also requested that Mother complete a drug screen, and Mother failed to comply because she did not have time. Dandridge was unable to confirm the

existence or Mother's participation in the online parenting course. Mother also stated to Dandridge that she was completing mental-health services through Able Counseling. Dandridge was unable to confirm or verify Mother's participation with Able Counseling.

{¶12} On cross-examination, Dandridge testified that she did not verify whether Mother was employed with Amazon. Dandridge attempted to contact Able Counseling from a phone number Mother gave her and was unable to reach the provider. Dandrige also stated that she did not know if Mother's home was appropriate because she had not visited Mother's home. Because visits between Mother and the children are suspended, Dandridge had not observed Mother with the children.

## C.     Testimony of Mother

{¶13} After Dandridge's testimony, Mother testified that she has a written lease, is employed by Amazon, and can pay her rent. Mother further testified that because she is on probation for child endangerment, she is required to do drug screens and has not tested positive during those screens. Mother testified that she attends biweekly mental-health services with Able Counseling.

{¶14} Mother stated that she did not have anything in her apartment for the children because she is "not really financially stable to be spending all of this money on children that I don't know if are going to come." Tr. 69. Mother also

testified that she completed her case plan services and has four minutes left on the online parenting course.

{¶15} On cross-examination, Mother testified that she did not give the agency written documentation that she is participating in mental-health services through Able Counseling. Mother stated that she gave her therapist's cell phone number to the case worker. Mother also testified that she is getting services from Signature Health as well but has missed a couple of therapy sessions.

{¶16} After being asked if she knew that two mental health providers cannot provide the same services to one individual, Mother stated that she did not, but it is not a problem because she has not engaged with Signature Health in a couple of months. Mother also stated that she has not provided the agency with any documentation of her participation in any mental-health services.

{¶17} Mother stated that she is not financially stable and does not have enough money "to be excessively spending on children that I do not know that is going to be coming home." Tr. 74. However, Mother stated that she can meet the basic needs of the children.

{¶18} Mother's testimony concluded, and the trial court asked if the GAL would like to place her recommendation on the record. The GAL answered in the affirmative and stated to the court that she would recommend the trial court grant CCDCFS's motion for permanent custody of the children.

**D. Testimony of Lilia R. Merecicky, GAL for the child**

{¶19} Mother's counsel questioned Lilia Merecicky ("Merecicky"), the GAL for the children, after she recommended the trial court grant the motion for permanent custody. During her testimony, Merecicky testified that she had not visited Mother's home since the end of 2023, believed that mother was employed, and was not aware of the conditions of Mother's employment. Merecicky further testified that she did not know if Mother could meet the basic needs of the children and had no concerns about her having a medical marijuana card.

{¶20} After closing arguments, the trial court stated that it would issue its decision through its journal entry.

### E.    Trial Court's Decision

{¶21} In the trial court's journal entries, it committed the children to the permanent custody of CCDCFS and terminated Mother's and Father's parental rights. Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024). In the journal entries, the trial court found that Mother has not made significant and substantial progress on her case plan. The trial court found by clear and convincing evidence that it is in the best interest of the child to be placed in the permanent custody of CCDCFS. *Id.*

{¶22} Mother filed an appeal assigning two errors for our review:

1.    The trial court's decision to grant permanent custody is against the weight of the evidence under the provision of R.C. 2151.414(E); and

2. The trial court's decision granting permanent custody of the children was contrary to the weight of the evidence as being in the best interests of the children.

## III. Permanent Custody

{¶23} In Mother's assignments of error, she contends that the trial court erred by awarding permanent custody of E.F. and Z.F. to CCDCFS against the manifest weight of the evidence under R.C. 2151.414(E) and is not in the best interests of the children. We will discuss both errors together for ease of discussion.

{¶24} To terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e); and (2) permanent custody is in the best interest of the child. *In re S.H.*, 2012-Ohio-4064, ¶ 27 (8th Dist.). "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. *In re Y.V.*, 2011-Ohio-2409, ¶ 13 (8th Dist.), citing *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶25} When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement

and whether such a placement can be achieved without permanent custody; and, (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

**{¶26}** Also,

> [w]hen reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.*, 2023-Ohio-4703, ¶ 14 (8th Dist.).

**{¶27}** The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist.). The discretion that the juvenile court enjoys in deciding whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. *Id.* at 316.

{¶28} "Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied. Once the juvenile court ascertains that one of the four factors listed in R.C. 2151.414(B)(1) is present, then the court proceeds to an analysis of the child's best interest." *In re J.B.*, 2013-Ohio-1705, ¶ 80-81 (8th Dist.).

{¶29} Regarding the first prong of the analysis, for both E.F. and Z.F., the trial court found by clear and convincing evidence that pursuant to R.C. 2151.414(B)(1)(a) and (b):

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> The child is abandoned by Father.

{¶30} The trial court also stated in each journal entry, "[T]he child's continued residence in or return to the home of [Mother] would be contrary to the child's interest." Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024). Further, the trial court determined that E.F. and Z.F. could not be placed

within a reasonable time or should not be placed with either parent because there

is evidence that one or more factors in division (E) of R.C. 2151.141 exist:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(10) The parent (Father) has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant. Father has never appeared for Court. Mother is on probation for attempted child endangering, with one of her other children as the victim.

Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024).

{¶31} Continuing to address the first prong of the analysis, the trial court stated in its journal entries:

The Court further finds that reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: For Mother, mental health, substance abuse, parenting, anger management, and basic needs/housing services. For the Father, parenting, domestic violence, and basic needs/housing services. The child receives case management services.

Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024).

{¶32} Mother did not submit any documentation to the agency verifying the online parenting class, her employment, or substance-abuse and mental health counseling. Additionally, mother has refused to submit to a drug screen conducted by the Agency several times. Mother was also on probation for child endangerment and has had her parental rights of three older children terminated.

{¶33} As to the first prong of the analysis, the record supports that the trial court did find clear and convincing evidence through the existence of any one of

the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), as discussed in the analysis above.

{¶34} The second prong of the analysis requires the trial court to determine that granting permanent custody to the agency is in the best interest of the child. In accordance with R.C. 2151.414(D)(1):

> In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> > (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
> >
> > (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
> >
> > (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
> >
> > (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶35}** In the trial court journal entries, it states that regarding R.C. 2154.414(D)(2)(e) and 2151.414(E)(10), and (11) apply. Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024).

**{¶36}** Additionally, in its journal entries, the trial court stated:

With respect to the best interest of the child, the court finds that pursuant to R.C. 2151.454(D)(2) that all of the following apply:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

As all of these sections apply, permanent custody is in the best interest of the child, and this court, as required by this statute, shall commit the child to the permanent custody of CCDCFS.

Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024).

**{¶37}** Additionally, the trial court stated that "the Guardian Ad Litem recommends that permanent custody is in the child's best interest." Further, the

court found by clear and convincing evidence that it is in the best interest of the children to be placed in the permanent custody of CCDCFS pursuant to R.C. 2151.414(D)(1) and (2) and granted CCDCFS's motion to modify temporary custody to permanent custody. The trial court terminated the rights of the parents. Journal entries Nos. AD-22906616 and AD-21907517 (Jan. 12, 2024).

{¶38} After a thorough review of the record, we find the decision of the trial court to award permanent custody to CCDCFS was not against the manifest weight of the evidence. Therefore, Mother's assignments of error are overruled.

{¶39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., and
SEAN C. GALLAGHER, J., CONCUR